**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

IVAN ENRIQUE JIMINEZ FUENMAYOR,

     Petitioner,

v.

MARKWAYNE MULLIN, Secretary, Department of Homeland Security; CURRENT ATTORNEY GENERAL of the United States; TODD LYONS, Acting Director of Immigration and Customs Enforcement; MARY DE ANDA-YBARRA, Field Office Director Enforcement and Removal; and WARDEN, Otero County Processing Center,

     Respondents.

                                  Case No. 1:26-cv-00622-MIS-LF

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Ivan Enrique Jiminez Fuenmayor's Petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, filed March 2, 2026. Respondents Markwayne Mullin, Current Attorney General of the United States, Todd Lyons, and Mary De Anda-Ybarra ("Federal Respondents"),[1] filed a Response on March 17, 2026, ECF No. 6. Petitioner filed a Reply on March 27, 2026. ECF No. 7. Upon review of the Parties' submissions, the record, and the relevant law, the Court will deny the Petition.

---

[1] Respondent Warden of Otero County Processing Center did not file a response or otherwise appear in this case. It has become standard practice in these habeas cases for the warden of the relevant detention center to either appear and adopt the federal respondents' arguments, *see, e.g., Intriago-Sedgwick v. Noem*, Case No. 1:25-cv-01065-MIS-LF, Notice of Joinder In USA Respondents' Forthcoming Claims and Defenses, ECF No. 11 (D.N.M. Dec. 3, 2025), or not appear at all, *see Francisco v. Dedos*, Case No. 1:25-cv-01229-MIS-GJF, Proposed Findings and Recommended Disposition at 8, ECF No. 53 (D.N.M. Jan. 20, 2026).

## I.  Background

Petitioner is a citizen of Venezuela who lawfully entered the United States on October 12, 2023 under the Venezuelan Humanitarian Parole program. Pet. ¶¶ 1-3, ECF No. 1. Petitioner was temporarily paroled into the United States and subsequently filed an application for asylum. *Id.* ¶¶ 4, 6; ECF No. 1-1 at 3. On March 25, 2025, the Department of Homeland Security (DHS) announced the termination of the Venezuelan Humanitarian Parole program. Resp. ¶ 6, ECF No. 6. On June 12, 2025, DHS began emailing parolees to announce the termination of parole. *Id.* ¶ 7. There is no indication Petitioner received an email. *See generally* Pet., ECF No. 1; Resp., ECF No. 6. Petitioner's temporary parole, however, ended on October 10, 2025. Resp. ¶ 9; ECF No. 1-1 at 3. Petitioner was apprehended on October 29, 2025, and has remained in custody since that date. Resp. ¶ 10, ECF No. 6; Pet. ¶ 12, ECF No. 1. Petitioner is detained under 8 U.S.C. § 1225(b)(2). Pet. at 3, ECF No. 1. Petitioner has not received a bond hearing while in detention. *Id.* ¶ 14. Petitioner is in non-expedited removal proceedings under 8 U.S.C. § 1229a. Resp. ¶ 12, ECF No. 6.

## II.  Discussion

Petitioner argues that applying "§ 1225(b)(2) to an individual who was previously granted parole and lived within the interior of the country for an extended period stretches the statutory framework beyond its border-inspection purpose." Pet. at 3, ECF No. 1. Petitioner argues he should instead fall under 8 U.S.C. § 1226(a), which, as Petitioner notes, provides for individualized custody determinations, i.e., bond hearings. *Id.* at 4. Petitioner also argues his prolonged detention, 120 days, without a custody hearing violates due process even under § 1225(b)(2). *Id.* at 4-5. Petitioner requests the Court order his release or, in the alternative, order Respondents provide Petitioner with a bond hearing at which the Government bears the burden of proof. *Id.* at 7.

In their response, Respondents "recognize that this Court has repeatedly concluded that the [8 U.S.C. § 1226(a)] discretionary detention provision governs the detention of noncitizens residing in the United States after their entry," *id.* at 2 (citing cases), and that "if the Court adheres to its decision . . . then Fuenmayor's petition will be granted," *id.* Respondents, however, noted that Petitioner entered through a Port-of-Entry and was granted temporary parole which ended prior to his detention, circumstances different than several other cases decided by this Court. *See id.* at 2-3. Respondents argue that Petitioner should be treated as though he was stopped at the border and is subject to mandatory detention under 8 U.S.C. § 1225, since "parole is 'not . . . regarded as [] admission of the alien,'" *Id.* at 9 (citing  8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("[W]hen the purpose of parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'")).

The Court agrees with Respondents and finds that, as Petitioner's parole lawfully terminated prior to his detention, he is subject to § 1225 and is not entitled to a bond hearing.[2]

There is at least one district court case within the Tenth Circuit which granted a habeas petition to an alien detained after the expiration of his parole. The court in *Rafibaev v. Noem* granted the petition of a citizen of Russia or Tajikistan detained after a Wyoming State Highway Patrol Officer, having consulted with local ICE officials, determined his parole had expired. No. 26-CV-00461-PAB, 2026 WL 607559, at *1 (D. Colo. Mar. 4, 2026) (citations omitted). *Rafibaev* found the petitioner was subject to § 1226(a) because (1) the language in § 1182(d)(5)(A)

---

[2]     The Court finds it unnecessary to determine whether Petitioner's parole lawfully terminated in June or October, 2025. Petitioner's temporary parole was scheduled to end on October 10, 2025 and he was apprehended after its expiration, on October 29, 2025. Resp. ¶¶ 9-10, ECF No. 6.

mandating noncitizens shall "forthwith return or be returned to the custody from which he was paroled" and "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States" does not "justify treating [a] petitioner, who was paroled, as if he is 'arriving in the United States,'" *id.* at \*4-5, and (2) he was already present in the country at the time of detention, *id.* at \*5.

The Court finds *Rafibaev* unpersuasive based on *Jennings* and *Sierra v. Immigration & Naturalization Services*, 258 F.3d 1213 (10th Cir. 2001), which persuade this Court that parolees, despite having lived within the Untied States, have the same legal status as a noncitizen at the border once their parole has lawfully ended. The Court first summarizes *Jennings* and *Sierra* before explaining why the Court will deny the Petition.

### A. *Jennings v. Rodriguez*

*Jennings* concerned a Mexican citizen and lawful permanent resident who was convicted of drug offenses and vehicle theft. 583 U.S. at 289. After his convictions, the government detained him under § 1226 and began removal proceedings. *Id.* at 289-90. During proceedings, he filed a habeas petition seeking a bond hearing. *Id.* at 290. While finding the petitioner was not entitled to a bond hearing under § 1226(c), *id.* at 305-06, the Supreme Court explained the difference between §§ 1225 and 1226, *id.* at 287-89. The former allows the government to detain certain aliens "seeking admission" into the country while the latter permits the government to detain certain aliens already in the country. *Id.* at 289. This Court, and many others, relies on that distinction when determining whether aliens detained within the country are subject to § 1226. *See, e.g., Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at \*3 (D.N.M. Jan. 13, 2026). The Supreme Court explained that, under § 1182(d)(5)(A), '[r]egardless of [whether §§ 1225(b)(1) or 1225(b)(2)] authorizes their detention . . . when the purpose of the parole has been

served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" 583 U.S. at 287-88.

In *Rafibaev*, the court based its grant of the habeas petition partially on the *Jennings* distinction between seeking admission and being already present within the country, 2026 WL 607559, at *5, but declined to address the parole language, *see generally* 2026 WL 607559.

## B. *Sierra v. Immigration & Naturalization Services*

The petitioner in *Sierra* was a Cuban citizen paroled into the United States during the Mariel boat lift. 258 F.3d 1213, 1215-16 (10th Cir. 2001). After being convicted of several crimes, the government denied his application to be a lawful permanent resident and he was ordered deported, but Cuba would not accept him back. *Id.* at 1216. He landed in federal prison. *Id.* The Mariel program required his case be reviewed each year to determine whether he should be paroled. *Id.* After several years his parole was granted but, due to fighting in prison, was revoked before his release. *Id.* The petitioner filed a petitioner for writ of habeas corpus arguing he was entitled to a hearing on the withdrawal of parole. *Id.*

The Tenth Circuit held he was not entitled to a hearing on his parole withdrawal. *Id.* at 1219-20. Although the petitioner "ha[d] been physically present in the United States for more than twenty years, [he was] 'legally considered to be detained at the border and hence as never having effected entry into this country.'" *Id.* at 1218 (citation omitted). He had no Due Process "liberty interest in being released on parole." *Id.* (citation omitted). And, therefore, had only the applicable statutes provided by Congress to support his petition. *Id.* (citation omitted). The court found the Attorney General had discretion to deny parole under two pertinent statues, and neither required a hearing on parole withdrawal. *Id.* at 1219-20.

5

*Rafibaev* did not address *Sierra*. *See generally* 2026 WL 607559.

**C.** ***Jennings* and *Sierra* dictate that parolees whose parole has lawfully ended have the status of an alien at the border and are therefore subject to § 1225, not § 1226.**

Taken together, *Jennings* and *Sierra* confirm that parolees revert to the same legal status as an alien at the border once their parole lawfully ends. *Jennings* stated that, under §1182(d)(5)(A), once the purpose of parole is complete, parolees revert to their previous status under §§ 1225(b)(1) or 1225(b)(2). 583 U.S. at 287-88. Under *Sierra*, a parolee is legally considered to be at the border. 258 F.3d at 1218. *Jennings* and *Sierra*, if not binding, are more persuasive than *Rafibaev*. The Court finds §1182(d)(5)(A) means Petitioner falls under § 1225 because, once his parole lawfully terminates, he reverts to the same legal status he had before entering the country.

*Rafibaev* and *Jennings* examined § 1182(d)(5)(A). 2026 WL 607559, at *5; 583 U.S. at 288. Section 1182(d)(5)(A) states

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

*Rafibaev* found that, because "return to custody" in §1182(d)(5)(A) uses the term "return," it "recognizes that noncitizens paroled under its authority are released into the United States" and therefore cannot mean "noncitizens would revert back to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens 'arriving into the United States.'" 2026 WL 607559, at *4. *Rafibaev* goes on to find that "[t]he second requirement of § 1182(d)(5)(A)—that after

returning to custody a noncitizen's case shall continue to be dealt with in the same manner as any other applicant for admission—also does not make § 1225(b)(1) applicable" because "dealt with in the same manner as any other applicant for admission" means any other applicant who has been in the United States. *Id.* Having dispensed with both "return to custody" and "dealt with in the same manner," *Rafibaev* finds "that § 1182(d)(5)(A) does not require petitioner to be detained under the same statutory status as his original detention [§ 1225(b)(1)]" and instead "that petitioner's detention is governed by § 1226(a)." *Id.* at *4-5.

*Rafibaev* rests on two assumptions: the legal status of someone physically entering the country must change; and Congress used the term "return" to indicate an alien should fall under § 1226 rather than § 1225, yet still included phrases like "parole . . . shall not be regarded as an admission of the alien" and "when the purposes of such parole shall . . . have been served . . . his case shall continue to be dealt with in the same manner as that of any other applicant for admission." § 1182(d)(5)(A). This seems unlikely. *Jennings* discussed the same language and found parolees revert to §§ 1225(b)(1) or 1225(b)(2) once parole within the country concludes. 583 U.S. at 288. The Court agrees. Section 1182(d)(5)(A) is more naturally read as rendering parole a means by which Congress either maintains the legal status of the parolee or permits a legal change only while on parole, with a reversion on conclusion.

This interpretation also keeps with *Sierra*'s language that a parolee's legal status is "detained at the border" at the end of parole. 258 F.3d at 1218. Petitioner has reverted to the legal status of one detained at the border.

As this Court has previously based its determination between whether a petitioner should be subject to §§ 1225 or 1226 on whether they were "present in the United States," *Lopez-Romero*, 2026 WL 92873, at *4, Petitioner's legal status, after lawful parole termination, as having never

effected entry into the country means he is subject to § 1225. Petitioner is therefore not entitled to a bond determination hearing under § 1226. Petitioner is subject to the mandatory detention provisions of § 1225.

**D. Under *Sierra*, Petitioner does not have a due process right to parole.**

Petitioner also argues he has a procedural due process right to a bond hearing because of his prolonged detention of 120 days. Pet. at 4, ECF No. 1. This is not the case.

First, as a threshold matter, Petitioner's presence within the country does not entitle him to due process protections. Although *Rafibaev* declined to examine the petitioner's due process claims, 2026 WL 607559, at *5 n.10, some courts have found parolees have a liberty interest once released on parole into the United States and are entitled to due process protections upon termination or revocation, *e.g., Singh v. Andrews*, No. 1:26-CV-00457-DC-SCR, 2026 WL 292649, at *4 (E.D. Cal. Feb. 4, 2026), *report and recommendation adopted*, No. 1:26-CV-00457-DC-SCR (HC), 2026 WL 392339 (E.D. Cal. Feb. 12, 2026) (collecting cases). The Tenth Circuit in *Sierra*, however, flatly stated that "[t]he Due Process Clause does not provide [the petitioner] a liberty interest in being released on parole." *Sierra*, 258 F.3d at 1218 (citation omitted). As the petitioner in *Sierra* was situated similarly to Petitioner, having been physically within the country while on parole, this Court finds the Tenth Circuit language controlling as it pertains to parolees like Petitioner, whose parole has been lawfully terminated. Petitioner's presence within the country does not give him a liberty interest in parole protected by due process.

Second, Petitioner has not been in prolonged detention. Although prolonged detention may, in some circumstances, require justification, *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (holding detention of persons under an order of final removal beyond six months presumptively unreasonable); *Khan v. Current Sec'y of Dep't of Homeland Sec.*, No. 2:26-CV-00315-MIS-GJF,

2026 WL 776190, at *2-3 (D.N.M. Mar. 19, 2026) (granting petition for writ of habeas corpus where the government did not rebut the petitioner's showing that there was good reason to believe there was no significant likelihood of removal in the reasonably foreseeable future), that is not the case here. Petitioner has been detained for only four months, Pet. at 5, ECF No. 1, and has not provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, *see generally* Pet., ECF No. 1; Reply, ECF No. 7. Petitioner does not have a Due Process right to parole or a parole hearing based on the length of his detention.

## III. Conclusion

Petitioner's parole was lawfully terminated prior to his detention and therefore his legal status reverts to the same status as if he were at the border prior to entry. He is subject to § 1225 and is not entitled to a bond or parole hearing. Furthermore, his time within the country while on parole does not entitle him to a procedural due process claim on parole termination, nor has he been in prolonged detention.

Therefore, it is **HEREBY ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

9